FILED

2016 FEB - 1  PM 2: 04

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| SUPREME MANUFACTURING, INC. | : | CIVIL ACTION NO: |
| Plaintiff, | : | 1:16 CV 238 |
| vs. | : | JUDGE GWIN |
| MAXUS CAPITAL GROUP, LLC | : | JURY TRIAL DEMANDED |
| Defendant | : | MAG. WHITE |

**COMPLAINT**

AND NOW, comes the Plaintiff, SUPREME MANUFACTURING, INC. by and through counsel, Jeffrey P. Myers, Esq., appearing *pro hac vice* and files this Complaint and in support thereof avers as follows:

**Jurisdiction:**

1.    Diversity provides a basis of this Court's jurisdiction. 28 U.S.C. §§ 1332.

**Venue:**

2.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this district.

**The parties:**

3.    Plaintiff, Supreme Manufacturing, Inc. (Supreme Manufacturing), is a Pennsylvania corporation which does business and maintains a principal place of business at 327 Billy Boyd Rd., Stoneboro, PA 16153.

4.    Defendant, Maxus Capital Group, LLC (Maxus Capital), is a limited liability company which has a principal place of business at 31300 Bainbridge Road, Cleveland, OH 44139.

### Factual Background:

5.      Supreme Manufacturing designs and manufactures clamshell dredges and other related machinery for use in various industries.

6.      Maxus Capital provides equipment financing services.

7.      On or about May 8, 2014 Supreme Manufacturing and United Rock Products (United Rock) began to negotiate a purchase order for the inventory component parts necessary to fabricate a dredge for mining purposes. United Rock is not a party to this lawsuit at this time.

8.      Supreme Manufacturing entered into a financing agreement with Maxus Capital whereby Maxus Capital would finance the United Rock project by leasing the dredge components to Supreme Manufacturing. Supreme Manufacturing would then construct the dredge equipment and deliver the equipment to United Rock.

9.      On September 2, 2014, Supreme Manufacturing entered into Master Lease No. 1425 with Maxus Capital. The Master Lease is attached hereto as Exhibit "A".

10.     Section 17 of the Master Lease, which was drafted by Maxus Capital, contains its Default Provisions.

11.     The Master Lease was supplemented by Schedule 001 and Schedule 002. Schedules 001 and 002 are attached hereto as Exhibit "B'.

12.     The principal amount of Schedule 002 of the Master Lease was $3,996,249.96.

13.     While negotiating Schedule 002 of the Master Lease, Maxus Capital verbally requested a 3% "Exit Fee" on the principal of the Lease to be charged upon Supreme Manufacturing's early termination of the contract.

14.     Supreme Manufacturing flatly rejected the Exit Fee, verbally and in writing, and the Exit Fee was not included in the contract documents. Supreme Manufacturing's December 13, 2014 email rejecting the Exit Fee is attached hereto as Exhibit "C".

15.     Maxus Capital sent Supreme Manufacturing a Leasing Proposal dated December 30, 2014, which did not reference any Exit Fee. A true and correct copy of the December financing Proposal is attached hereto as Exhibit "D ".

16.     On January 6, 2015, Maxus Capital sent Supreme Manufacturing a revised Leasing Proposal, which again did not reference any Exit Fee. A true and correct copy of the January 6, 2015 Leasing Proposal is attached hereto as Exhibit "E ".

17.     On February 18, 2015, Maxus Capital issued a loan Commitment letter which identified further Lease terms. A true and correct copy of the Commitment letter is attached hereto as Exhibit "F".

18.     The Commitment letter also does not include an Exit Fee.

19.     Pursuant to the Commitment letter Supreme Manufacturing agreed to pay a monthly rent to Maxus Capital until Supreme Manufacturing either (a) purchased "all but not less than all Equipment at the then fair market value" or (b) exercised an "Early Termination Option."

20.     Upon final payment pursuant to the Early Termination Option, Maxus Capital agreed to Supreme convey all of its right, title and interest in the Equipment, free and clear of all liens and encumbrances, to Supreme Manufacturing.

21.     On October 14, 2015, Supreme Manufacturing forwarded the principal loan amount of $3,996,249.96 to Maxus Capital via a bank transfer.

22.     On October 14, 2015, Maxus Capital sent Supreme Manufacturing an email with a Statement attached, in which Maxus demanded an October 2015 service fee of $2,875.00, interim interest of $12,632.40 and a legal/administrative fee of $5,000.00. A true and correct copy of said Email/Statement is attached hereto as Exhibit "G'.

23.     The Statement also included an Exit Fee of $245,001.00.

24.     On October 15, 2015, Supreme Manufacturing sent Maxus Capital an email requesting documentation evidencing the Exit Fee. A true and correct copy of Supreme Manufacturing's email is attached hereto as Exhibit "H".

25.     To date, Maxus Capital has not provided Supreme Manufacturing with documentation evidencing the Exit Fee.

26.     On October 15, 2015, Supreme Manufacturing forwarded a check to Maxus Capital in the amount of $20,507.40, representing the October 2015 service fee of $2,875.00, interim interest of $12,632.40 and the legal/administrative fee of $5,000.00, but not the Exit Fee. A true and correct copy of Supreme Manufacturing's check is attached hereto as Exhibit "I".

27.     On October 20, 2015, Maxus Capital returned the $20,507.40 to Supreme Manufacturing with a letter stating the check was insufficient because it did not include an Exit Fee in the amount of $245,001.00. Said letter is attached as Exhibit "J".

28.     On October 29, 2015, Mike Dance ("Dance"), who identified himself as a "principal" of Maxus Capital telephoned Supreme Manufacturing's President and demanded the $245,001.00 Exit Fee.

29.     Dance left a voice message on the President's phone stating that if Supreme Manufacturing did not pay the $245,001.00 Exit Fee, that Dance would "use my personal resources from a different angle to get you down in Georgia."

30.     On January 15, 2016, Maxus Capital stated that Supreme Manufacturing was in default under the Master Lease for failing to provide certain financial statements. A true and correct copy of said letter is attached hereto as Exhibit "K".

31.    Failure to provide financial statements is not an enumerated event of default under Section 17 of the Master Lease.

32.    Despite repeated demands, Maxus Capital refuses, and continues to refuse to provide documentation evidencing the Exit Fee.

33.    Despite repeated demands, Maxus Capital refuses, and continues to refuse to convey all of its right, title and interest in the Equipment, free and clear of all liens and encumbrances, to Supreme Manufacturing.

34.    On January 19, 2016, a Maxus Capital representative appeared to inspect the Supreme Manufacturing shop, office equipment and vehicles, which are items included in Schedule 001.

35.    On January 21, 2016, Maxus Capital filed a replevin complaint in the Court of Common Pleas of Cuyahoga County in Cleveland, Ohio wherein Maxus Capital seeks monetary damages in excess of $8 million and to replevin the dredge equipment. A true and correct copy of said Complaint is attached hereto as Exhibit "L".

36.    Supreme Manufacturing intends to remove the Cuyahoga County case to this Court.

## COUNT I – FRAUDULENT INDUCEMENT:

37.    Supreme Manufacturing incorporates by reference the statements contained in the preceding paragraphs as if the same were set forth at length herein.

38.    Maxus Capital induced Supreme Manufacturing to enter into the transaction by representing that there would be no Exit Fee.

39.    The existence (or non-existence) of an Exit fee was material to the transaction.

40.    Maxus Capital concealed the existence of the Exit fee to induce Supreme Manufacturing into entering into the Lease, knowing that Maxus Capital would seek to enforce the Exit Fee at the end of the transaction.

41.    Supreme Manufacturing reasonably relied upon Maxus Capital's representation, because none of the contract documents reference an Exit Fee.

42.    Supreme Manufacturing has been harmed by Maxus Capital's conduct because Maxus Capital will not issue a bill of sale to Supreme Manufacturing, Inc. conveying all of its right, title and interest in the Equipment free and clear of all liens and encumbrances.

43.    Supreme Manufacturing will be harmed by Maxus Capital's conduct because Maxus Capital has taken affirmative steps to replevin the dredge equipment.

44.    Supreme Manufacturing will be harmed by Maxus Capital's conduct because Maxus Capital seeks in excess of $8 million in damages on a transaction that involved only $3,996,249.96, which principal has been paid in full, and in which Supreme Manufacturing tendered the agreed-to fees, but which Maxus Capital returned.

45.    Supreme Manufacturing's reputation with its customer, United Rock, and its parent company, Colas, Inc. has been damaged by Maxus Capital's conduct.

## COUNT II -BREACH OF CONTRACT

46.    Supreme Manufacturing incorporates by reference the statements contained in the preceding paragraphs as if the same were set forth at length herein.

47.    The parties had a contract whereby Maxus Capital agreed to issue a bill of sale to Supreme Manufacturing conveying all of its right, title and interest in the Equipment free and clear of all liens and encumbrances once Supreme Manufacturing made payment in full.

48.    Supreme Manufacturing has timely paid the principal under the contract.

49.     Supreme Manufacturing also tendered all agreed-to fees under the contract, but Maxus Capital returned Supreme Manufacturing's final payment because the final check did not include an Exit Fee.

50.     An Exit Fee is not included in the contract documents.

51.     Maxus Capital refuses, and continues to refuse to issue a bill of sale to Supreme Manufacturing conveying all of its right, title and interest in the Equipment, free and clear of all liens and encumbrances.

52.     Maxus Capital demands a 3% Exit Fee of $245,001.00 on a transaction that involved only $3,996,249.96.

53.     Maxus Capital is in breach of the contract between the parties.

54.     Supreme Manufacturing has been damaged by Maxus' breach of contract.

### RELIEF REQUESTED

WHEREFORE, Plaintiff, Supreme Manufacturing, demands the following relief:

(a)     A determniniation that Maxus Capital has commited fraud in the inducement.

(b)     A determniniation that Maxus Capital is in breach of contract.

(c)     That Supreme Manufacturing be awarded compensatory damages, exemplary damages, and attorney's fees.

(d)     That Maxus Capital Group be directed to issue a bill of sale to Supreme Manufacturing, Inc. conveying all of its right, title and interest in the Equipment, free and clear of all liens and encumbrances.

(e)     That Maxus Capital Group be directed to pay Supreme Manufactruing punitive damages to deter similar conduct in the future.

(f)     That Supreme Manufacturing be awarded such other and further relief, including

all appropriate equitable relief, as this Court deems appropriate under the circumstances.

(g)     That Maxus Capital Group be enjoined from demanding an Exit Fee from Supreme

Manufacturing.

(h)     That Maxus Capital Group be enjoined from replevying Supreme Manufacturing's

dredge, dredge components and other equipment covered under the Lease(s).


By:     _____

Jeffrey P. Myers, Esquire
Pa. I.D. #90677
17025 Perry Highway
Warrendale, PA  15086
Tel:  724-778-8800
Fax: 724-779-9650
E-mail:  jpmyerslawoffice@gmail.com
ATTORNEY FOR PLAINTIFF